IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOSE CRUZ-ALTUNAR,

      CASE NO. 2:14-cv-1844
    Petitioner,      JUDGE ALGENON L. MARBLEY
      MAGISTRATE JUDGE KEMP

    v.

WARDEN, ROSS
CORRECTIONAL INSTITUTION,

    Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the petition (Doc. 1), the return of writ (Doc. 7), Petitioner's traverse (Doc. 8), and the associated exhibits. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that the petition be **DENIED** and that this case be **DISMISSED**.

### I. Procedural History

On August 2, 2010, the Franklin County, Ohio grand jury indicted Petitioner on one count of aggravated murder and two counts of murder arising out of the death of one Ricardo Perez on July 24, 2010. Petitioner pleaded not guilty to those charges. The case was tried to a jury which, on October 31, 2011, returned a verdict of guilty on two counts of murder, and a verdict of not guilty on the charge of aggravated murder. *Return of Writ*, Exhibits 1 and 3.

In an entry filed on January 20, 2012, the trial court sentenced Petitioner to fifteen years to life on the murder charge, along with five years of post-release control. *Return of Writ*, Ex. 4.

Through counsel, Petitioner timely appealed to the Tenth District Court of Appeals. He raised two assignments of error: (1) that the trial court erred by not giving an instruction on voluntary manslaughter; and (2) that the convictions were against the manifest weight of the evidence and not supported by the evidence. *Return*, Ex. 6. In a decision rendered on October 18, 2012, the court of appeals overruled each of Petitioner's assignments of error and affirmed his convictions. *State v. Cruz-Altunar*, 2012 WL 4953064 (Franklin Co. App. Oct 18, 2012).

Acting *pro se*, Petitioner appealed to the Ohio Supreme Court. His notice of appeal, which was not filed within 45 days of the state court of appeals' order, was accompanied by a motion for leave to file a delayed direct appeal, which explained that because he did not speak English and was incarcerated, he was unable to file his notice of appeal in a timely fashion. *Return,* Ex. 14. The Ohio Supreme Court denied that motion and refused to accept the appeal *State v. Cruz-Altunar* , 139 Ohio St.3d 1482 (July 23, 2014). Petitioner had also filed, again without the benefit of counsel, a motion to vacate his sentence and to void his conviction; it was filed in the trial court on December 20, 2012, and raised an issue about the sufficiency of the indictment. *Return of Writ*, Exhibit 9. That motion appears still to be pending in the common pleas court.

On October 9, 2014, Petitioner filed his petition for a writ of habeas corpus with this court. He asserts the following ground for relief:

> **Ground one:** The trial court erred in refusing to give an instruction on voluntary manslaughter when the evidence warranted such an instruction.
>
> **Ground two:** Appellant's convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.
>
> **Ground three:** Petitioner was not able to "timely" appeal further, due to a language barrier, and having no Spanish interpreter to afford him access to courts from the State.

Respondent has suggested that the statute of limitations was tolled by the filing of the motion to vacate sentence and conviction, which is still pending, but notes that if the statute of limitations began to run on the date when Petitioner could have filed a timely appeal of the state appellate court's decision, it would have expired prior to the time this case was filed. However, respondent's primary argument is that all of the claims raised by Petitioner have been procedurally defaulted. Alternatively, Respondent argues that claims one and two are without merit and that claim three is not cognizable in habeas corpus.

## II. The Facts

The Court begins by reciting the facts as they were set out in the state court of appeals opinion. That court said:

> Appellant was indicted on one count of aggravated murder and two counts of murder for the death of [Ricardo] Perez. Appellant pleaded not guilty to the charges, and a jury trial ensued. At trial, Adrian Worthington testified as follows. On July 24, 2010, appellant and Perez were arguing and trying to punch each other. The fight lasted for three minutes until appellant walked away. Appellant returned three to five minutes later, and he approached Perez with a knife. Perez pulled a knife from his

pocket, but Worthington took that knife in an attempt to thwart another fight. Nevertheless, appellant stabbed Perez. Perez fell to the ground and tried to defend himself by kicking appellant. Appellant stabbed Perez four more times and fled.

Deputy Coroner Kenneth Gerston testified that Perez died from four of his stab wounds. Gerston said that the nature of those wounds indicates that Perez was lying down when he was fatally stabbed and that his assailant was above him. Gerston also noted that Perez had a "defensive wound" on his body. (Tr. 369.) Franklin County Sherriff Deputy John Robison testified that appellant was found hiding in a nearby bush after the stabbing. Detective William Duffer testified that appellant admitted to stabbing Perez.

After the prosecution rested its case-in-chief, appellant testified as follows on his own behalf. On July 24, 2010, appellant was walking toward his apartment when Perez approached him. Perez wanted some beer that appellant was carrying. Appellant refused to give up his beer, and Perez and two other men attacked him. The fight ended and appellant went home. Appellant later went back outside with a knife, and he saw Perez again. Appellant waited by a dumpster to see what Perez was going to do. Perez approached him and threw him to the ground. Next, Perez pulled out a knife and tried to stab him. Appellant was afraid, and he stabbed Perez multiple times. Perez "loosened up and let go of his switchblade." (Tr. 425.) Appellant stabbed Perez another time and left.

At the close of the evidence, appellant asked for jury instructions on self-defense and voluntary manslaughter. The trial court gave the self-defense instruction, but it declined to instruct on voluntary manslaughter. Afterward, the jury found appellant not guilty of aggravated murder and guilty of the two murder counts.

*State v. Cruz-Altunar, supra*, at *1.

### III.  Legal Standards

### A.  The AEDPA

-4-

The provisions of the Antiterrorism and Effective Death Penalty Act, Pub.L. 104–132, 110 Stat. 1214 (AEDPA) govern the scope of this Court's review. *See Penry v. Johnson,* 532 U.S. 782, 791 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir.2008). AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24,(2002) (per curiam).

When the claims presented in a habeas corpus petition have been presented to and decided by the state courts, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding

In applying this statute, the Supreme Court has held that "[t]he focus ... is on whether the state court's application of clearly established federal law is objectively unreasonable ... an unreasonable application is different from an incorrect one." To

obtain habeas corpus relief, a petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, --- U.S. ----, ----, 132 S.Ct. 26, 27 (2011), quoting *Harrington v. Richter*, 5 62 U.S. ----, ----, 131 S.Ct. 770, 786–8 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S.Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 50 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.*, quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

### B.  Procedural Default

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. §2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. §2254(b), (c).  If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to

dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6, 103 (1982 (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas...." *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case-that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985). Turning to the fourth part of the *Maupin* analysis, in order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must " 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.' " *Edwards,* 529 U.S. at 452 (quoting *Murray v. Carrier*, 477 U.S. 478, 479 (1986)). That is

-8-

because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Or, if procedurally defaulted, petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000). The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in *Coleman*: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to " 'protect the integrity' of the federal exhaustion rule." *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting id., at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by " 'letting the time run' " so that state remedies were no longer available. *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].' " *Id.*, at 854, 526

> U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)).

### III. Discussion

It is clear that Petitioner did not file a timely appeal to the Ohio Supreme Court. That is ordinarily a procedural default, and Petitioner does not contend otherwise. However, he argues that the language barrier he faces, coupled with the State's refusal to provide adequate translation services to inmates who do not speak English, excuses any procedural default he may have committed. Respondent, relying on the Court of Appeals' decision in *Bonilla v. Hurley*, 370 F.3d 494 (6th Cir. 2004), argues that "unfamiliarity with the English language is not cause to excuse the procedural default." *Return,* at 13.

The facts presented in *Bonilla* are these. Bonilla was convicted of multiple felonies in an Ohio court and those convictions were affirmed on appeal. He moved for leave to file a delayed appeal to the Ohio Supreme Court; that motion was denied. He

had raised multiple reasons why that court should have accepted his delayed appeal, including his lack of familiarity with English, but the Ohio Supreme Court rejected his arguments. In affirming the denial of his federal habeas corpus petition, the Court of Appeals held, first, that the Ohio Supreme Court's refusal to entertain a delayed direct appeal supported a finding of procedural default. It then concluded that he had not established cause to excuse that default, holding that Bonilla's *pro se* status, his ignorance of the law, his mistaken belief that he needed a complete copy of his trial transcript before filing his notice of appeal, his limited law library time, and his lack of familiarity with the English language, were not valid excuses. In particular, it held that language difficulties are not a factor "external" to the defense under *Murray v. Carrier*, *supra*. *See Bonilla*, 370 F.3d at 498. Other federal courts have reached a similar conclusion. *See, e.g., Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010); *Vazquez v. Lockhart*, 867 F.2d 1056, 1058 (8th Cir. 1988); *Sanchez v. Hetzel*, 2014 WL 1491178, *4 (M.D. Ala. 2014)(collecting cases). Consequently, due to Petitioner's failure to file a timely appeal with the Ohio Supreme Court, his claims have been procedurally defaulted. His claim that the state courts prevented him from taking a timely appeal, to the extent that it represents an independent ground for relief, fails for the same reason.

Even if that were not the case, the two claims which Petitioner raised in the state courts would not succeed here. As to the sufficiency of the evidence, this Court is required, first, to give deference to the jury's finding that the evidence supported conviction beyond a reasonable doubt, *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979), construing the evidence in the light most favorable to the prosecution. This is a hard

standard for a habeas petitioner to overcome. But a federal court, considering a habeas petition arising out of a state conviction, is also required to apply the deferential standard of the AEDPA to its review of the state court's decision on this subject. That is, the federal court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable" - creating, in effect, two layers of deference to the state courts' decisions. *See Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Here, the jury found the evidence sufficient to support a conviction for murder. There was no dispute that Petitioner wielded the knife which killed Ricardo Perez. He claimed self-defense. However, as the state court of appeals noted, "the jury was able to conclude that appellant lied when he testified that he killed Perez out of fear for his life. For instance, corroborating testimony from Worthington and Gerston [two other witnesses] indicates that Perez was on the ground trying to defend himself when appellant leaned over him and fatally stabbed him. In addition, Worthington testified that Perez was unarmed during the conflict." *State v. Cruz-Altunar*, *supra*, at *3. That evidence is sufficient to sustain a murder conviction, and the state court's finding to that effect was not unreasonable.

The only other substantive issue which Petitioner has presented relates to the trial court's refusal to give a jury instruction on voluntary manslaughter. The state court rejected that argument because, under Ohio law, voluntary manslaughter is defined as a killing which occurs while the perpetrator is under the influence of sudden passion or a sudden fit of rage. That court concluded that because the evidence showed

that Petitioner "had sufficient time to calm down after [the first] fight" before he returned with a knife and the second fight - the one in which Perez was killed - took place. *Id*. at *2.

In *McMullan v. Booker*, 761 F.3d 662, 667 (6th Cir. 2014), the Court of Appeals had this to say about such a claim, when presented in federal habeas corpus:

> Federal courts may grant habeas relief only on the basis of federal law that has been clearly established by the Supreme Court. § 2254(d)(1). The Supreme Court, however, has never held that the Due Process Clause requires instructing the jury on a lesser included offense in a non-capital case. See *Beck [v. Alabama]*, 447 U.S. [625] at 638 n. 14, 100 S.Ct. 2382 [1980)]. Simply put, "the Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir.2001) (citing *Bagby v. Sowders*, 894 F.2d 792, 795–97 (6th Cir.1990) (en banc)). What is determinative, at any rate, is that the Supreme Court has never so held.

That being so, the state court's failure, in Petitioner's case, to give a lesser-included offense instruction cannot have been a violation of clearly-established federal law. So, too, the state court of appeals' decision cannot have been contrary to, or an unreasonable application of, clearly established federal law. Thus, Petitioner would not be entitled to relief on this claim even if it had not been procedurally defaulted.

### IV. Recommendation

For all of the reasons stated above, it is recommended that the petition for a writ of habeas corpus be **DENIED** and this action be **DISMISSED.**

### V. Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written

objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ Terence P. Kemp
United States Magistrate Judge